UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA DENISE SHERRY, | No. 1:15-CV-03115-LRS |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 19).

## JURISDICTION

Angela Denise Sherry, Plaintiff, protectively applied for Title II Disability Insurance benefits (DIB) on February 7, 2011. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on February 7, 2013, before Administrative Law Judge (ALJ) Mary Gallagher Dilley. Plaintiff testified at the hearing, as did Vocational Expert (VE) Trevor G. Duncan. On November 27, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 42 years old. She has past relevant work experience as a waitress, housekeeper, medical assistant, and carpet cutter/sewer. At the hearing, Plaintiff amended her alleged disability onset date to May 11, 2005, on which date she was 34 years old. Her date last insured for Title II benefits is December 31, 2007.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2**

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the opinions of record from medical and non-medical sources; and 2) discounting Plaintiff's credibility.

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: affective disorder, anxiety disorder, personality disorder, and poly substance abuse; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: routine work involving occasional contact with the public and co-workers; 4) Plaintiff's RFC allows her to perform her past relevant work as a housekeeper and a carpet cutter/sewer and other jobs existing in significant numbers in the national economy as identified by the VE, including hand packager and production assembler. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**OPINIONS OF MEDICAL SOURCES**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff's amended alleged disability onset date of May 11, 2005, coincides with the date of the Washington Department of Social Health Services (DSHS)

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

"Psychological/Psychiatric Evaluation" form completed by Richard W. Washburn, Ph.D.. When the Plaintiff presented herself to Dr. Washburn, she claimed she could not work because she "can't keep personal life out of it" and "sometimes sleeps for days." She indicated she had worked for about four months," "[h]ad crying spells at work" and that it was "easier to withdraw." (AR at p. 240). Dr. Washburn found that Plaintiff had a "severe" depressed mood, "severe" verbal expression of anxiety or fear, and a "marked" suicidal trend. He diagnosed Plaintiff with major depression without psychotic symptoms; generalized anxiety disorder; panic disorder with agoraphopia; and personality disorder, not otherwise specified, with borderline features. He assigned her a Global Assessment Functioning (GAF) score of 55.[1] (AR at p. 241). He indicated that Plaintiff had no cognitive limitations, but that Plaintiff had a "severe" limitation in her ability to respond appropriately and tolerate the pressures and expectations of a normal work setting, a "marked" limitation in her ability to care for self, including personal hygiene and appearance; and a "moderate" limitation in her abilities to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and to control physical or motor movements and maintain appropriate behavior. Just below the check marks he made regarding social function limitations, Dr. Washburn wrote: "[r]eports high levels of depression, anxiety and anger." (AR at p. 242). The doctor also checked the "yes" box with regard to the question of "[i]s mental health intervention likely to restore or substantially improve the individual's ability to work for pay in a regular and

---

[1] A GAF score of 55 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

predictable manner?" Dr. Washburn added that Plaintiff needed "medication and mental health services." (AR at p. 243).

In an accompanying "Assessment Summary," Dr. Washburn wrote that with regard to Plaintiff's "Capacity To Work," Plaintiff "reports high levels of depression and anxiety and may have a bipolar disorder," that Plaintiff "does not have the emotional stability needed to cope with full time gainful employment," but that the "prognosis is fairly good if [Plaintiff] receives mental health services." (AR at p. 245).

In February 2006, Plaintiff was evaluated at Puget Sound Neighborhood Health Center by Steven Dresany, M.D., who indicated, without any diagnosis or explanation whatsoever, that Plaintiff was unable to work until at least September 2006. Likewise in November 2006, Melissa Chinn, D.O., wrote, without any diagnosis or explanation, that it was her recommendation that Plaintiff not return to work at that time.

In a February 2007 letter, Adrianne Martinez, R. N., of the Snohomish Health District, wrote that she had been working with Plaintiff since April 2006 and that Plaintiff "has the mental health diagnosis of bipolarism and obsession (sic) compulsive disorder." (AR at p. 247). Dr. Washburn did not, however, diagnose Plaintiff with Obsessive Compulsive Disorder (OCD) and he only suggested that Plaintiff "may" have a bipolar disorder. There is nothing in the record indicating that a psychologist or psychiatrist diagnosed the Plaintiff with either OCD or bipolar disorder during the relevant period from May 11, 2005 to December 31, 2007, even though Nurse Practitioner Linda Ciarmitaro, ARNP, and therapist Akiko Suzuki, M.A., of Compass Health, did so in April 2007. (AR at pp. 248-49). As noted above, the ALJ did not find that OCD and bipolar disorder were among Plaintiff's "severe" medically determinable impairments. Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §404.1513(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §404.1513(d). An ALJ can reject opinions from these "other source[s]" by providing "germane" reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The record does not support the existence of OCD and bipolar disorder as a "severe" medically determinable impairment during the relevant period of time (March 11, 2005 to December 31, 2007). By not finding those to be "severe" medically determinable impairments, the ALJ provided a germane reason for rejecting the opinions of ARNP Ciarmitaro and therapist Suzuki regarding Plaintiff's functional limitations. (AR at pp. 24-25). That leaves only Dr. Washburn's opinion because clearly, the wholly conclusory opinions of Drs. Dresany and Chinn are not entitled to any weight.

With one exception, the ALJ found that Dr. Washburn's assessment was entitled to weight "as it is consistent with the claimant's mental status exam, treatment history, and progress notes during the relevant period . . . [and] [t]his assessment also supports finding that the claimant was capable of routine work with limited social interaction." (AR at p. 23). The exception was Dr. Washburn's opinion that Plaintiff was severely limited in the ability to respond appropriately and tolerate the pressures/expectations of a normal work setting, and did not have the "emotional stability" needed to cope with full-time employment. The ALJ found this assessment relied heavily on Plaintiff's reported symptoms and history, and that it was not consistent with Dr. Washburn's findings of intact cognitive functioning, average intelligence, and a good prognosis with medication and therapy. (AR at pp. 23-24).

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

That Plaintiff had no cognitive limitations, had intact cognitive functioning and was of average intelligence, per Dr. Washburn, does not, by itself, detract from the doctor's opinion regarding social limitations, including that of Plaintiff having a "severe" limitation in her ability to respond appropriately and tolerate the pressures and expectations of a normal work setting. On the other hand, it was rational for the ALJ to conclude that Dr. Washburn's opinion regarding Plaintiff's social limitations was based on Plaintiff's "[self]-reports of high levels of depression, anxiety and anger." Indeed, Dr. Washburn made a point of writing this statement on the DSHS form, directly below the boxes he had checked regarding social factors, even though the form, at that particular place, did not specifically call for him to make any statement. And specifically with regard to Plaintiff's "Capacity To Work," Dr. Washburn wrote that Plaintiff's prognosis was "fairly good if [she] receives mental health services."

The record bears out that Plaintiff did subsequently receive mental health services and that medication was effective for her. In a May 26, 2009 Central Washington Comprehensive Mental Health (CWCMH) evaluation, ARNP Sandy Birdlebough wrote that Plaintiff had been "doing well on medications, prior to her meds being stolen." (AR at p. 257).[2] Elsewhere in her evaluation, Birdlebough reiterated that Plaintiff had been "doing well until three weeks ago, when her medications were stolen, and through a series of events, she did not restart them." She added that Plaintiff "has responded well to these medications in the past." (AR at p. 260). Birdlebough indicated that Plaintiff's current GAF was 45 (serious

---

[2] Plaintiff started out on Lamictal and Celexa, and Seroquel was added "because she was still raging." (AR at p. 257). Birdlebough's note indicates that Plaintiff was "doing well" on these three medications before they were stolen.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

symptoms or any serious impairment in social, occupational, or school functioning). (AR at p. 257). While it true that at Plaintiff's CWCMH "intake assessment" on April 17, 2009, the therapists indicated Plaintiff's current GAF was 46, this was only an intake assessment and not a formal evaluation. And the therapists indicated that Plaintiff's highest GAF in the past year had been 56. (AR at pp. 267-68). Having reviewed the post-2007 record, the court finds nothing in there clearly calling into question the ALJ's evaluation of the pre-December 31, 2007 record.[3]

The ALJ provided "clear and convincing" reasons to partially discount the opinion of Dr. Washburn who examined the Plaintiff on a single occasion. The ALJ's RFC determination is otherwise consistent with the limitations opined by Dr. Washburn and is a rational interpretation of his report which is supported by substantial evidence.

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [her] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d

---

[3] Indeed, there are references in the post-2007 record to Plaintiff performing work (volunteer or otherwise) for EPIC. (AR at p. 295).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between [her] testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ found that Plaintiff's "daily functioning and other reported activities [were] inconsistent with allegations of disabling conditions."  (AR at p. 22).  According to the ALJ:

> The record during the relevant period indicates that the claimant was able to live in shared housing with a roommate and her infant daughter; care for her infant daughter, as well as two dogs and a cat; clean/organize her residence, and use food stamps to buy groceries.  As noted above, the claimant engaged with a public health nurse for regular prenatal and post-partum care visits, and participated in individual psychotherapy twice a month[] in 2007. [Citation omitted].  In addition, she was able to attend medical appointments, follow the course of treatment and comply with recommendations for mental health counseling and to monitor diet/food intake for maintenance of healthy blood sugar level [Citation omitted].

(AR at pp. 22-23).

These activities are consistent with the residual functional capacity determined by the ALJ which, in turn, is consistent with the limitations opined by Dr. Washburn except to the extent his opinion regarding certain social limitations was properly discounted by the ALJ, as discussed above.  Plaintiff's "daily functioning and other reported activities" are therefore, a clear and convincing reason for discounting her assertion that she is incapable of performing any type of substantial gainful activity.

The ALJ offered another reason for discounting Plaintiff's credibility:

> The record indicates that the claimant has continued to use drugs and did not fully disclose her substance use.  During a 2003 consultative psychological evaluation, the claimant reported that she was not currently using drugs, and the examiner's assessment included methamphetamine abuse "in early remission." [Citation omitted].  In 2005, the claimant reported to Dr.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

> Washburn that she was not using substances. [Citation omitted]. She testified at the hearing that she stopped using drugs including marijuana as of 2003. However, in a 2009 evaluation, the claimant reported that she had been clean and sober for only four years [citation omitted], indicating that she was still using drugs in 2005 at the time of Dr. Washburn's evaluation, which she did not disclose. Additionally, a May 2010 evaluation assessed the claimant with amphetamine abuse, which suggests that the claimant had continued to use drugs or had relapses- including methamphetamine use- during periods when she had been claiming to have mental symptoms/limitations despite sobriety [citation omitted].

(AR at p. 23).

At the administrative hearing, the ALJ asked the Plaintiff if she had "had a problem with drugs or alcohol in the past." The Plaintiff unequivocally answered "no." (AR at p. 50). Later during the hearing, the ALJ confronted the Plaintiff about diagnoses in a DSHS evaluation of "methamphetamine abuse, in early remission," and "cannabis abuse, in early remission." (AR at pp. 56 and 370). Plaintiff's response was that she did not "use" methamphetamine, but that she "tried it" and had "tried a lot of things." (AR at p. 56). It appears Plaintiff testified that a 2003 evaluation assessed that she was not "chemically dependent" and according to Plaintiff, she "quit substance abuse then completely." (AR at p. 57). Yet later during the hearing, the ALJ asked Plaintiff about a reference in a November 9, 2012 CWCMH assessment to her having "a history of marijuana and methamphetamine use" and having "had chemical dependency treatment at Triumph Treatment Services, in 2005." (AR at pp. 70 and 479). According to the assessment, Plaintiff reported having "maintained sobriety since that time [2005]." (AR at p. 479). Plaintiff admitted to the ALJ that in 2005 she had "smoked some weed" and "did a line of meth" with a friend of hers" and that she had an evaluation that showed no chemical dependency on her part. (AR at pp. 70-71). As the ALJ pointed out in her written decision, however, a May 21, 2010 assessment from Triumph Treatment Service

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

diagnosed her with amphetamine abuse, reasonably suggesting she had not maintained sobriety after 2005. (AR at p. 560). According to the assessment:

> Insufficient indicators to support a diagnosis dependence, however, there is a use history that supports the need for early intervention/prevention strategies. Patient continues to use in unhealthy situations that may cause harm to self or others.

(AR at p. 560).

At the conclusion of the administrative hearing, the ALJ told Plaintiff's counsel that "[w]hat we're looking at for the record is some conflicts . . . with regard to potential substance abuse about the time of the alleged onset date [May 11, 2005] and the date last insured [December 31, 2007], and those, most likely, could be resolved if we could get records from Triumph . . . and another source might be - - if you would choose to do so, would be to get a statement from the last employer about what was observed." (AR at p. 81). It appears the May 21, 2010 Triumph assessment was one of the records that counsel submitted subsequent to the administrative hearing, but this assessment, instead of resolving conflict about Plaintiff's substance abuse, actually raised more questions about substance abuse during the period between May 11, 2005 and December 31, 2007.

It is the ALJ's prerogative to determine credibility of a claimant because the ALJ is in the unique position to observe the claimant's demeanor and conduct firsthand. *Molina v. Astrue*, 674 F.3d 1104, 1120-21 (9th Cir. 2012). Here, the ALJ reasonably concluded there were inconsistencies in Plaintiff's testimony regarding her substance abuse during the relevant period of time and/or inconsistencies between her testimony and certain reports in the record regarding her substance abuse. This was a "clear and convincing" reason to discount her credibility.

//
//

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

**LAY TESTIMONY**

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be considered by an ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

At the suggestion of the ALJ, Plaintiff's counsel also obtained a statement, dated August 1, 2013, from Plaintiff's last employer "about what was observed" while Plaintiff was employed. Cynthia Delp of County Farms Produce Market in Edmonds, Washington wrote as follows:

> Angela Sherry worked for me at Country Farms in 2005. It became obvious very quickly that Ms. Sherry did not have the ability to stay focused on the job. She was not able to make decisions regarding correct priorities in the job even after these matters were brought to her attention. Angela is a nice person[,] but she did not have the ability to stay focused on the job. She would get busy straightening fruit when she should have been helping customers. Although the job involved simple routine repetitive tasks[,] she was not able to successfully complete those tasks. It was obvious to me that Angela had significant issues she needed to deal with before she was ready for regular competitive work.

(AR at p. 174).

The ALJ gave Ms. Delp's statement "less weight" for two reasons;

> [T]his statement was drafted in terms that are not typical for an employer (*e.g.*, not able to complete "simple routine repetitive tasks"), and appears to have been prepared as an advocacy statement. Further, the statement is remote in time from events during the period pertinent to this case, and does not account for the claimant's drug use at the time and its effect on her functioning.

(AR at p. 25).

Clearly, the ALJ suggested that a statement from Plaintiff's last employer might be helpful, knowing that it would be "remote in time." Therefore, this is not

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

a germane reason to reject Ms. Delp's statement, nor is it a germane reason to give the statement less weight because it "appears" to have been prepared as an "advocacy statement." While the language used in the statement- "simple routine repetitive tasks"- is indeed language commonly used in social security parlance regarding functional limitations, it also is something an employer would know about, especially if the job, as here, involved routine repetitive tasks.

Nevertheless, the "clear and convincing" reasons the ALJ offered for discounting Plaintiff's testimony as to her functional limitations (daily living activities and inconsistent statements about drug use) constitute "germane" reasons for discounting the statement of Ms. Delp. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)(because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). It was rational for the ALJ to conclude that drug use by the Plaintiff likely interfered with her ability to discharge her employment duties at Country Farms in 2005.

## CONCLUSION

Because the ALJ offered clear and convincing reasons for partially discounting Dr. Washburn's opinion regarding Plaintiff's social limitations, and because the ALJ offered clear and convincing reasons for discounting Plaintiff's testimony regarding her social limitations, it follows that the ALJ's determination of Plaintiff's RFC during the relevant period of time (May 11, 2005 and December 31, 2007) is supported by substantial evidence. The VE testified that this RFC allowed Plaintiff to perform some of her past relevant work as well as other jobs existing in significant numbers in the national economy.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff was not disabled between May 11, 2005 and December 31, 2007, and therefore, not entitled to Title II disability insurance benefits.

Defendant's Motion For Summary Judgment (ECF No. 19) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this __6th__ day of January, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 16**